Good morning, your honors. May it please the court, my name is Jessica Price, pro bono counsel for plaintiff appellant Tyrone Rogers. Mr. Rogers is a faithful man whose faith called for him to attend religious services on weekends, but prison officials made a series of decisions that burdened that religion that cannot satisfy the least restrictive means test under our LUPA. They decided to implement lockdowns in order to save money. Every weekend that those lockdowns were in place, they decided that inmates could go to visiting, and each of those weekends that lockdowns were in place, they decided that group religion would not be allowed. They clearly made choices here, including the decision to allow visiting and the decision to allow inmates to get their food in groups of 17, and Congress has said that religion matters in this context, but there's no evidence that they took it seriously here. Why not allow inmates to schedule their services more than one day in advance? So as I understand it under our LUPA, the only relief you can get is injunctive relief, correct? That is correct. So Mr. Rogers takes injunctive relief under our LUPA. So what evidence is there that this policy is continuing? So the defendant said that the lockdown stopped in July 2011, but Mr. Rogers testified in October 2012 that the lockdowns continued. Under the plan? He seemed to be aware of the plan. In that deposition testimony at ER 60, he admitted that he was not sure why those lockdowns continued. He just knew that they were still taking place, and there is no evidence in the record that in this record that the defendants have committed to stop imposing the lockdowns. Instead, there is a decision by Director Giorbino back in 2010 that the lockdowns were a success and would continue in order to save money. So based on that evidence, a decision by Director Giorbino that the lockdowns would continue with no end date in sight, and Mr. Rogers' deposition testimony more than a year after they said that the lockdowns stopped, that the lockdowns continued, that would be evidence that the lockdowns have not ceased. There is no commitment by the defendants in the record that they would not use costs in the future to refrain from restricting religious services. Could you point me to the precise language in his deposition where he says they're continuing? Yes, that's at ER 60. ER 60? Yes. Oh, I'm sorry. No, that's the one day in advance rule. That's SCR 169 to 70. At the very bottom of page SCR 169, after he said that the lockdowns had stopped, he was asked, has there been any rolling lockdown since July 1st, 2011? And he answered, that is a hard question to answer. I said, why is that? And he said, because I know that even though information can say that it is for one particular reason, it's not always for that particular reason. So we've had lockdowns for different reasons, and I have no idea why. That's a pretty slender read upon which to base a conclusion that we continue to have rolling lockdowns because we're trying to save money. That's right. The only evidence at the defendant's site to say that the lockdowns have stopped is this very same testimony. Two questions earlier, he said the lockdowns stopped. Two questions later, he said they had continued, and he didn't know why. If there were any decision to actually stop the lockdowns, you would expect to see some evidence other than Mr. Rogers' deposition testimony that the restrict religious services. Yeah, you know, at the bottom of page SCR 170, question, do you have any information that indicates that any of the lockdowns after July 1, well, it says 2001, it's obviously mean 2011, were for the purpose of the 3 to 5% reduction plan? No. That's right. Mr. Rogers does not know why the lockdowns continued. He didn't put forth any clear that the allegedly unlawful allegedly unlawful conduct would not reasonably be likely expected to recur. And here, the only citation for that is Mr. Rogers deposition testimony. They've made no commitment not to reimplement these lockdowns. There's no policy statement or there's no declaration that was submitted here. No declaration from the defendants that the that the lockdowns have ceased. The defendant said in their opposition to the motion to dismiss that lockdown stopped in August 2010. Now they say lockdown stopped in July 2011. Also relevant to this problem is exactly what you're challenging. Because whether what you're challenging continues depends on what you're challenging. And you as I understand it, you're, you're involved in this case, which is limited. Yours is challenging the rolling lockdowns, and not the security lockdowns. Is that right? For purposes of Mr. Rogers does challenge both sets of lockdowns. But for purposes of the Arlupa claim, it is that the cost based lockdowns that in for which the defendants never allowed religious services when they occurred on weekends does not satisfy the least of the Arlupa. So only looking at the rolling lockdowns that happened every other day, or every fourth day. So if, for example, there were some other lockdowns, continuing, which, as he says, he doesn't know the reason for and weren't assertively security lockdowns, but were lockdowns and one doesn't know why they're not exactly covered by this challenge. Is that right? Other lockdowns may have a different compelling government interest associated with them. So here you can see the difference in the government's interest when you look at their affidavits concerning the three 10 day lockdowns and the rolling lockdowns. When it came to the three 10 day lockdowns, they said an item had gone missing, whether it was scissors or a dental tool. Because that item was missing, they couldn't allow inmates to go to the chapel. Allowing inmates to go to the chapel would have contaminated the search, would have extended the length of the lockdowns, and would have precluded other inmates from going to medical or library. It would have affected other inmates' programs. That's the testimony that they put forth as to the 10 day lockdowns. As for the rolling lockdowns, all they said was, I considered whether group worship was possible. And because leaving inmates unsupervised creates the possibility of inmate on inmate violence, group worship was not possible. That sort of formalistic response cannot satisfy the rigorous and exacting standard review under our LUPA. There has to be some evidence that they seriously considered some alternative. And here, that alternative is obvious in the record that they created in their motion for summary judgment. Because when Mr. Rogers testified at ER 60, there was a rule that inmates had to schedule their services one day in advance. So if the lockdowns were every other day, he could have attended services as often as never. And the evidence in this record only demonstrates three times that Mr. Rogers was actually allowed to attend services. That would be May 8, May 29, and November 27 in 2010. And that's at SCR 70 to 76. There's no other evidence in the record indicating Mr. Rogers ever got to attend any other religious services. And to the extent that they say the four day lockdowns only occurred once every four days, Mr. Rogers testified that even when there were four day lockdowns, they occurred every other day. Let me come back to this question as to whether or not the rolling lockdowns are continuing. He says he has no evidence that they are continuing under that previous policy. He says they're lockdowns, but he doesn't know why. It strikes me that it's very hard for us under this circumstance to give injunctive relief because we don't know what they're doing and we don't know why they're doing it. If that's so, the only thing we have is the possibility of damages. Now, there's no possibility of damages, as I read the Wood case, under Arlupa. There's maybe a possibility of damages under a straight First Amendment claim, although the First Amendment will be less protective than Arlupa would be. What do we know about the possibility of damages under the First Amendment? So I have two responses for that. First on the damages and then one case I want to cite as to mootness as to why the case cannot be considered moot based solely on whether or not there's been a First Amendment violation. And the district court here only considered whether the lockdowns were rationally connected to a legitimate penological interest and connected the cost savings plan to the security concern. The district court never engaged in the four-part test, and the Ninth Circuit in Shakur reversed the grant of summary judgment where a district court did not actually engage in the four-part test. The First Amendment claim got knocked out on a motion to dismiss. Yes. So the only facts available for purposes of the First Amendment is what Mr. Rogers said in his complaint. And in his complaint, he cited the inability to attend weekend services. So looking at the complaint, it's not about not being able to go every other day. It's about not being able to go at all. He didn't say he got to go sometimes. He said he didn't get to go at all. And in his complaint, he said that the reason was cost savings. So he has a First Amendment claim that it was a violation of Turner for the defendants to decide that they would not allow him to go to religious services at all in order to save money. What about qualified immunity? It wasn't reached. Is that right? It wasn't reached. And a clearly established law is that prison officials cannot completely cut off access to religious services in order to save money indefinitely. Do you have a case that tells us we can award damages against a state officer for a violation of the First Amendment? Mr. Rogers is only suing them for purposes of the First Amendment. That would be a claim against state officers in their individual capacity. He doesn't have a claim against them in their official capacity. I understand that. Do you have a case that allows a recovery of damages against a state officer for a violation of the First Amendment when sued in its individual capacity? Not off the top of my head. I can get that to you on rebuttal. So for purposes of the Turner claim, there's no Ninth Circuit decision that says that under the second prong of the Turner claim, whether the inmate had alternative means of exercising the asserted right. Mr. Rogers' complaint only says that he was allowed to exercise his religion in his cell. There's no case that says in-cell worship is sufficient to satisfy the second prong under our LUPA. In fact, under this court's decision in Ward, the court said we cannot conclude that the opportunity to engage in private prayer is enough to satisfy the second Turner factor. If it were, the factor would have no meaning at all because an inmate would always be able to pray privately. And the one other issue I wanted to address in terms of mootness is the defendants have said that the lockdowns have ceased. But the lockdowns were going on at the time Mr. Rogers filed his complaint. He says they kept going. He doesn't know why. This court held in 2009 in Seneca v. Arizona, which was with Judges Pius and Fletcher, where the prison officials provided an affidavit that said the policy changed and that the inmate had been awarded the accommodation requested. This court found that that could not establish mootness because such testimony fails to establish the permanency of the change in policy. It's their burden to make it absolutely clear that this conduct will not recur. And here, there's not even a statement, nothing in the evidence stating that from the defendants that the lockdowns have stopped or that their policy has changed. The remaining evidence by Director Giribino that the lockdowns will continue is the last statement from the defendants indicating whether the lockdowns would continue to be in effect. Well, suppose they came up with a declaration even here or if we reimagined the district court and said the following. We did this under those economic circumstances, whether we would do it under other economic circumstances, those economic circumstances no longer exist. We no longer have the financial problems. So as of now, we're not doing it. Whether we would do it under other economic circumstances depends on those economic circumstances, but that policy is over because the economic standards are gone. Is that moot or not moot? Not moot because that'd be a classic case of voluntary cessation. Absent any commitment from the defendants not to re-implement the policy, as soon as this litigation is over, they can reason the lockdowns based on costs or based on whatever. But my hypothetical is that they have declared that the trigger is over. In other words, you know, there's no longer Hurricane Katrina isn't there anymore. So in terms of that, that policy is over. You know, if there's another hurricane, we'll worry about it then. That leaves open the opportunity to re-implement the policy the minute that cost savings is a concern and the desire to cut costs is always a concern. So the implications of the defendant's decision here applies to all prisons because there's always an interest to reduce costs. And to use that reduction in costs to restrict religious services would render, to say that that is a compelling interest under IRLUIPA would render the compelling government interest test a nullity, which would be contrary to this court's repeated decisions in May and Shakur and Walker that the bare invocation of security is not enough to satisfy IRLUIPA. And certainly not the bare invocation of cost concerns. Well, but to follow up on Judge Berzon's question, there's going to be at some point the legitimate justification based on cost. That is to say, if someone says, I'm entitled to have group religious services morning, noon, and night, seven days a week, and the prison says, well, you really aren't, it would require so much staff and so much money, we don't have it. I think the plaintiff loses on that. So it's going to be fact dependent. So my concern is if you're asking for declaratory or injunctive relief, it would be very helpful to know, well, precisely what the imposition is. Is it rolling lockdowns every three weeks? Is it no lockdowns at all, but you can only go for services on Sunday? At some point, the case just isn't ripe if you're asking for declaratory relief. Or if you're asking for injunctive relief, the harm is not sufficiently particularized and imminent to justify such relief. That's a somewhat different question from whether it is moot. It's a question of whether it's sufficiently ripe for us to figure out what the real problem is based upon the facts in front of us. We don't have facts. So how do you justify on this record giving either declaratory or injunctive relief? It is undisputed that the lockdowns occurred every other day or every fourth day. Yeah, but that's the point. They did, but what would happen in the future? I mean, that's what Judge Fletcher is trying to get at. In other words, we don't know what happened, but given that the circumstances have changed, we don't know what's going to happen. Even if you think something's going to happen, maybe. The lockdowns have not ceased. That's not supported by the record. It's not in the record that the lockdowns continued as recently as last month, but we know that they have continued. Unfortunately, it's not in the record. This is where I started with the question of what are you challenging. If you were challenging lockdowns generically, then you'd be in good shape. But you're not challenging lockdowns generically. You're not challenging security lockdowns, and you said you're also not challenging other lockdowns for other reasons. So all you're challenging is lockdowns triggered solely by cost concerns and what the character of those may be in the future. I mean, suppose they were once every three weeks. That would be a different story. So we can't see into it. Even if we know that they haven't given up the authority to do this and that they may do it again, we still don't know what the it is. The it is the cost-based lockdowns, and the last statement from defendants on the record is that they would continue. So that is sufficient to establish that at minimum, there's no evidence at this case that the harm to Mr. Rogers has ceased. And the defendants moved for summary judgment on this record, which establishes that every four days or every two days. Where is the statement that they're continuing? The ER, SCR, SCR 170, where he said we have. That's the defendant, but is there anything, I mean, the plaintiff, but is there anything that the government has said about it? The government has not. Oh, oh, the government statement at the director, G.R. Bino statement in 2010 was that the lockdowns was were a success and would continue. So where's that? We realize that we realize we realize we're taking you over time, so don't can be concerned with that. I'm so sorry. No, no, it's not. No, I'm just telling you, relax. So so tell me again where I look for the superintendent. You're being a warden. E.R. forty nine. The S.E.R. forty nine. E.R. forty nine. And I said before, though, there was no current deck. There was no declaration that was offered in the summary judgment proceeding. There was no declaration. There's no there was deposition testimony from Mr. Rogers. Right. But my point was my concern was that there was no I didn't see a declaration from any state official saying this was the policy that we had. The economic concerns have changed. We're no longer following this policy. That's right. And their motion for summary judgment. They did not say that the lockdowns had ceased in their motion to dismiss and in their motion for summary judgment, which occurred after they say the lockdowns. They never argued that the policy had stopped and that the case was at that point in E.R. forty nine in the second paragraph. Halfway down. So I would say the last sentence, which is the lockdowns will continue to be implemented. For safety and security and the rolling lockdowns will also continue to be implemented at the direction of the director due to fiscal constraints. And that's that is a statement of January 6, 2011. That's right. Well, due to fiscal constraints. So do we know that fiscal constraints have continued? The defendants offered no evidence in their summary judgment motion that those fiscal constraints have been lifted. Mr. Rogers offered an article that indicated that the state was subject to overcrowding and was under severe financial pressure. Well, as we know, the overcrowding has been somewhat diminished for reasons unrelated to this lawsuit. Somewhat. But there's no evidence in this record that those fiscal constraints have been lifted. But we also have Mr. Rogers saying that he doesn't know why the lockdowns in as of I think it's July 2011 are continuing. He doesn't say that there because he doesn't describe them as rolling in the same way. He doesn't say that it's because of fiscal constraints. He just provides us no evidence at all. Right. So it's problematic to say his testimony as proof that the lockdowns have ended. If they really have ended. But I may be going to put the burden of proof on your client who's seeking the relief to tell us, to give us something upon which we can conclude that as of now, because we're talking about prospective relief from this time forward. Right. And the best evidence we have on that is a statement. Wouldn't it be a task for the district court to do if it gets remanded to the district court? I mean, the district court always at each stage of the proceeding has to make those kinds of determinations. Correct. Whether the lockdowns are going on today. I mean, it could be that the district court would determine, well, this would happen in the past, but there's no basis in the record on which I could grant you any meaningful injunctive relief and therefore decline. That's right. That is a factual issue on this appeal. There are no facts establishing mootness. It would be a question for the district court to determine whether the whether prison officials could present any sort of evidence proving that the lockdowns have ceased. Why don't we hear from the other side and we're taking you over, but we will give you a chance to respond. Thank you. May it please the court, Christina Dunn-Gruenberg on behalf of the appellees Gerbino and Uribe. I will be splitting my time with Ms. Jeffrey, who will be representing appellee Kuzil Ruan. Unless the court would prefer us to go in reverse order, I will be addressing the claims that were dismissed at the motion dismiss stage, which were specifically the First Amendment free exercise claims. And if the court wishes, I can also address the outdoor exercise and access to the court's claims that were raised in Mr. Rogers pro per brief, but were not raised specifically by his pro bono counsel. Ms. Jeffrey will then be addressing the RLUIPA claims and injunctive relief. That was the primary basis of pro bono counsel's argument. OK, I have to address this one question to you, though, with respect to RLUIPA. I understand from Wood that damages are not available against someone under RLUIPA when sued in individual capacity. That's correct, Your Honor. There is a possibility of suing in the official capacity, although there would then be available a defense under the 11th Amendment. Correct, Your Honor. You have not argued 11th Amendment in your brief to us. Have you ever argued 11th Amendment in defense of RLUIPA? I believe that we addressed the 11th Amendment, but it might have been specifically with context the First Amendment claim. I don't see an 11th Amendment defense in the red brief with respect to RLUIPA. Was your client sued under RLUIPA in both official and individual capacity? Yes, Your Honor. For damages. For damages. Yes, Your Honor. So what do I do with the fact that I don't see an 11th Amendment defense to the RLUIPA claim for damages? Well, it was because at the district court level, Director Durbino and Warden Uribe were dismissed at the motion dismiss stage on all allegations based on their lack of involvement in this case. And the RLUIPA claim stood specifically to Captain Kuzula-Ruan, and therefore, it would have been duplicative to have the warden and the director also in the lawsuit when the relief was against the captain. I'm not sure I understood that answer. I apologize, Your Honor. No, no, it's not your fault, but help me out. Try again. Okay. So at the motion dismiss stage, the court found that because there was no – that Director Durbino and Warden Uribe were not the individuals responsible for the lockdown. The district court found that that was under Captain Kuzula-Ruan, and therefore, because of any lack of individual involvement and because Warden Uribe and Director Durbino could not provide the relief that was sought, the RLUIPA relief, therefore, they could be dismissed in their entirety. But the captain was sued under individual and official capacity. Yes. And there was no Eleventh Amendment defense raised as to her? I don't believe there was an Eleventh Amendment. Right. But also, your – Her brief, in the brief for the captain, Eleventh Amendment is asserted as a defense. It's just your brief does not assert Eleventh Amendment defense. We addressed Eleventh Amendment, I believe, with respect to the First Amendment claim because that was the primary crux of what counsel's opening brief was, that the error was that the district court improperly dismissed the First Amendment claims against Durbino and Uribe. So the district court properly found that there was a legitimate penological interest in dismissing – there was a legitimate penological interest in the rolling lockdowns, and therefore, plaintiff could not state a claim under Turner v. Safely. The district court properly found that there does not require an extensive factual record. Mr. Rogers' opening brief mainly argues that the district court misinterpreted the Second Amendment complaint. We contend that that was incorrect, and even if the district court misinterpreted the Second Amendment complaint, it does not matter because there were sufficient allegations in the Second Amendment complaint that undercut his First Amendment claims. What allegations were those? You have to take the complaint in the light most favorable to him. Correct, Your Honor. First of all, if you look at the complaint, his allegations about the lockdowns being every fourth day were specific to his exercise claims and his access to the court's claims. It was not specific to his religion claims. What's more, the court did – Well, what difference does it make? I mean, they're facts, and he alleged them. Well, he – Make any sense? He did not allege that the lockdowns specifically interfered – the rolling lockdowns interfered with his chapel access. He was talking about the security lockdowns, which counsel concedes were illegitimate theological interests because there was the missing scissors. But he didn't say in his opening brief that because of the rolling lockdowns, he couldn't go to religious services? In his Second Amendment complaint, his complaint about his lack of chapel access was due to the security lockdowns. When he talked about that one-fourth of his rights were restricted under the rolling lockdowns, that was under the exercise. However, even if the court wants to impart the one-fourth lockdowns to the religious exercise, it wouldn't matter because the district court did not find that these rolling lockdowns were short-term, sporadic, or occasional, which is what the prison officials did try to argue in their motion to dismiss. The court rejected that argument and specifically differentiated this case from the Connell case, which found that the lockdowns were short, sporadic, and occasional. The district court did find that the lockdowns that Mr. Rogers complained about were more than short-term, sporadic, and occasional, and nonetheless still found that they were illegitimate penological interests because of the shortages of staff. Was the district court mixing up the security lockdowns with the rolling lockdowns? I couldn't really tell. It's possible. It's somewhat hard to tell, and I can't mind-read the district court. But I think because the district court found that these were more than short-term, sporadic, then it doesn't matter if they were mixing up or not because they did consider them a more longer-term context and rejected the prison officials' argument in their motion to dismiss that these were- Well, I mean, the lockdowns, when they had to search the prison for, what was it, the dental instrument, that makes sense. Right. You can see the obvious penological justification for that. Correct, Your Honor. It's not so clear when you talk about cost. Well, I think this case is more about-than cost. It's about staff reduction plan. Well, it's the same thing. I think there is a slight difference, Your Honor, because here the prison wasn't trying to cut-save money. The money was already gone. What they were implementing was a mandate that they had to reduce their staffing by 3 to 5 percent. This wasn't a matter of, oh, we can save a few dollars if we do this. Well, somebody at a higher level decided we can save a few dollars, and here's how we can save it. Right. But when we were talking about staff, the courts, the Ninth Circuit has found that staffing needs and the ability to staff the prison to provide security interest is a legitimate interest. And that was found in Anderson v. Angoloni where they found that group religious services could be cut when they couldn't find staff to properly supervise inmates. But the manner-I understand, okay, the prison's faced with a 3 to 5 percent cut in staff monies. But then it's up to, I guess, the individual prison to decide how they're going to handle that, right? Right, Your Honor. It occurs to me that maybe we're having something like-every now and again maybe the United States Park Service will have its budgets cut. And the response from some of the bureaucratic politicians is, well, that means we're-sorry, Yosemite's closed for the Fourth of July weekend. In other words, they impose the consequence of the cut in such a way as to make it particularly visible and painful, maybe as a way even for fighting the cuts. So merely because we've got a cut and then a response doesn't mean that this was the right response given the requirement that some allowance be made for religious services. So the fact that somebody else cut it doesn't mean that the decision as to what the impact will be is beyond scrutiny. Yes, Your Honor. And I'll address that question and then I'd like to- The complaint does not connect the staff cuts to the religious claim, but really connects it only to the free exercise outdoor claim instead of free exercise of religion claim. Right. I'm just reading from page-it's ER 105. I'm reading from the complaint. Gerbino should have known that such a drastic staff reduction would significantly alter plaintiff and other inmates' civil rights to normal religious services, outdoor exercise, and access to courts. That's quite the contrary of what you represented was in the complaint. I see that allegation, Your Honor. But when you get to the next page with religious services, he was talking about-I think the problem is that Mr. Rogers also confuses the rolling lockdowns with the security lockdowns. Well, okay. I'm now under religious services, which is now handwritten, and I'm on page 3C, which is still describing religious services. Yet cannot, when each defendant used an unnecessary rolling lockdown and wanton lockdown to reduce the spending of state monies created by overcrowding the California prison system. That's under the heading of religious services. Okay. Yes, I see that, Your Honor. So I think we got a connection in the complaint.  Yep. Okay. Thank you, Your Honor. Now, you were going to split time evenly. Why don't we put-just so you can comfortably go out to lunch together afterwards, why don't we put 7 minutes and 30 seconds on the clock? Thank you, Your Honor. May it please the Court, Janine Jeffrey on behalf of Captain Rizal Ruan. Rizal Ruan, excuse me. I'm going to start where the Court started with the injunction. The clock isn't moving. Yeah, we're still working on the clock. Bingo. Okay. I'll start where the Court started, which is with respect to injunctive relief. I think the Court accurately interprets Mr. Rogers' testimony. He admits that there are no more rolling lockdowns. There are lockdowns for other reasons. It's a prison. Lockdowns do happen. We have race riots. We have missing tools. We have all sorts of things that require a lockdown. But he is asked specifically, do you have any knowledge that there's any lockdown for any rolling lockdowns for budgets? And he says no. Go ahead. And he says no. So this claim was knocked out on summary judgment, correct? Correct. And you argued mootness, correct? Excuse me? Did you argue mootness? I don't believe mootness was argued on summary judgment. I was not the counsel of record at that time, and I do not believe it was argued. So is there any declaration, any official policy statement? There is not. There's not. And it's your burden when you claim, when there's a claim of voluntary cessation, it's your burden to demonstrate that the challenged activity is completely seized, correct? I believe that's correct. I believe that the fact that there has, I believe that's correct. I don't know that the record is adequate. Do I think this court should? It's really a question for the district court, isn't it? I think it is. In fairness, I think it is. I think if the district court finds that the lockdowns have ceased and that there's no, as the court pointed out, that lockdowns like this have to be evaluated. If a lockdown is every three weeks, it's different than if it's every other day. I think it does have to be evaluated on a factual basis. And I think if the department puts in evidence in the lower court that we haven't done this since July of 2011 and we don't have any plans to do it again in the near future, and if we did, we might look at it differently, I think that's enough to moot the argument. Okay. I'm not sure the court is interested in hearing any of the other arguments. I'm happy to address them. I don't think there was a substantial burden on religion. I think that was the plaintiff's burden to prove, and he did not prove it. The evidence in the record... Why is that? Why didn't he prove it? Yes. In what respect did he not prove it? I think the evidence in the record is that lockdowns were every three or four days, the rolling lockdowns. They didn't land on weekends other than maybe once a month, and I think that's a temporary cessation of religious services. I don't think that's a substantial burden under Ninth Circuit law. Well, can we say that is a matter of law for purposes of summary judgment? I'm sorry, Your Honor, I didn't... So this is granted on summary judgment, so we'd have to say as a matter of law this record shows no violation of our LUPA. It wasn't a significant interference with his religious exercise. I think it's a de novo review, and I think if the court looks at the record, the plaintiff has not proven that there was a substantial burden. Well, look, if a temporary cessation is temporary, if, for example, say there was a policy that said we're only going to allow religious services for the Protestant religion once a month, or three times a month but not the fourth, okay, is that a temporary cessation? I believe so. I think not allowing Protestant services once a month is not a substantial burden. But it's not temporary. It's just a question of whether it's substantial. Agreed. Agreed. But I think the analysis under the statute is whether it is substantial, and I think that that would not qualify as a substantial burden. I think... How does a court make that decision? If somebody says, look, my religion demands that every Sunday I go to religious services, and if I don't go one Sunday a month, I am not fulfilling my religious duty, and that's substantial. Now, what do we do with that? Well, I think you have to exercise due deference to the administrators who have to make competing decisions. No, no, no. Wait a minute. We're at a different stage now. You're telling me that this isn't a substantial burden. We're not up to that yet. All right? So the question is, how do we decide whether it's a substantial burden? I guess I would have to concede that's probably a jury issue at some point. It's a factual question, isn't it? Whether a jury thinks that missing religious services once every month is a substantial burden. Now, the allegation of the complaint is the injury plaintiff and other inmates suffered were the inability to attend weekend Saturday and Sunday Protestant fellowship, Sunday morning prayer service, and Saturday morning Bible study classes. What was developed in the record with respect to that allegation? As I understand it, what was developed in the record was the testimony by the prison staff that the rolling lockdowns occurred every four days. So there are four facilities on this prison, and in order to spread the burden of not having enough staff, Facility A would be locked down one day, then Facility B, Facility C, and Facility D. And that's why they were rolling lockdowns. And the effect, as I understand it, because of the one day in advance requirement, was that that resulted in two days not being available for religious services. I believe that that misstates the record to suggest that it was a one day in advance requirement. The counsel has argued that the one day in advance had to be the day before. That's not my understanding of what the record reflects. It actually was that at least one day before, so that it wasn't that you had to sign up the day before and therefore you're locked out. So I think that's a misstatement of the record. The other misstatement of the record I'd like to point out is the fact that 17 members were allowed to go eat. That is not what the record is. In fact, plaintiff's deposition, he says, what we were allowed to do was walk downstairs in the housing unit and pick up our tray and take it back to our cell. So I did want to just point that out for the clarity of the record. And the other point I want to make is this concept that, well, they shouldn't have allowed visiting on weekends. At some point, the prison is entitled to make decisions about how staff is allocated, and it's not entitled and it's not required to put religion above other significant interests of inmates. Well, that's a question under a loop, isn't it? I'm sorry. Whether under a loop or they in fact are required to put religion above other interests of inmates. I think the law is clear. Other interests of inmates do not have to be justified as restrictions on other interests do not have to be justified as they do under a loop, under strict scrutiny essentially. I think Cutter, this United States Supreme Court, says that you shouldn't elevate religion above all other significant interests. I think visiting is a significant... What is Cutter? Is Cutter a looper case? Yes. Cutter is 544 United States 709. And essentially the court not only speaks in terms of deference being given to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources. And Cutter also states that should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutions... But none of this addresses the point you made, which is whether if asked between staffing a visitor day and staffing religion, the looper requires that you staff religion. I don't believe that that is necessarily true. As this says, when it imposes unjustified burdens on other institutionalized persons, it's certainly an argument that visiting can only occur on weekends. That's when families can come see people. That's when they're not working. They travel long distances, whereas people can do in-cell worship. I see my time is beyond... Well, before you sit down, though, why don't you address the... Do you have anything to say about the First Amendment claim against your client, which is a claim for damages? Well, and we argued extensively in our brief that my client had a very, very narrow overlap of time with... Well, that's fine, but for that period of time, they're suing for damages. Then what? I'm sorry, Your Honor, I didn't... They're suing for damages for that period of time. That doesn't get you anywhere. Well, it gets to the point where there is not a... The argument was there wasn't a substantial burden. My client implemented lockdowns for one security reason, which I don't think is at issue here. That's the merits question, is it? So that's your argument is that it's not... That on the merits, there wasn't a substantial burden for First Amendment purposes. Correct. And that there was a compelling state interest, which is security. There aren't enough bodies to staff the prison. My client doesn't control the budget. She doesn't control any of that. She simply says, look, I don't have enough people. I've got to do this in the best way I can. So I've done these rolling lockdowns, and that's why on this day, Facility B is closed. The district court didn't address any claim for qualified immunity. Is that correct? I believe that's true. I don't believe the district court got there because it found that... It didn't state a claim entitled to summary judgment on the merits. And is it undisputed that it is your client who made the decision to implement the staff reductions by the rolling lockdowns, and that Gerbino and Uribe were not responsible for that? That's not even... No, that's not undisputed. Gerbino and Uribe were the director and the warden. My client had nothing to do with the budget. No, but that was the question. Who decided, given the budget issues, that there would be rolling lockdowns and that the religion... Well, aside from the rolling lockdowns, that the religious services would not be allowed? I believe that that was decided by the captain and approved by the warden. I thought the record was that it was made by your client and that the captain and the warden did not decide that. They might have decided on the rolling lockdowns, but they didn't decide what would happen during the rolling lockdowns. Well, I believe the evidence is actually in my client's declaration that she filled out the program status report and submitted it to the warden for approval. But what you've got here, essentially, is also three official capacity claims. If an official capacity claim is, in essence, a claim against the state of California, then it seems as if two of the three defendants are redundant. Well, but... Except for the damages. Except for damages. I understand that, on damages. But I'm kind of carving that out a little bit because what we were just talking about was the ARLUPA and the injunction issue. But as to damages, then you have to look at the individualized defendant's role in it. And as we put it out in our brief, my client's individualized role was very narrow because she was transferred to a different institution. Theoretically, that just only goes to the extent of any damages that could possibly be awarded against her. It goes back to my argument that it's not a substantial burden because it was... Well, I guess to the merits. Thank you, Your Honor. Thank you. Now, let's put two minutes on the clock. Okay, thank you. On the substantial burden piece, the defendants argue that it was short and sporadic. The case cited, Connell, constituted 18 hours of a denial of a religious accommodation. Here, it's continuous, it's systematic, and it's indefinite. It is a difficult decision for the court to conclude. Some restriction on someone's religious beliefs is not substantial. Here, the court would need to find that it's not significantly great. For example, if someone, an orthodox Jewish person, required kosher meals three times a day and was denied those meals one time a day, that would clearly be substantial. In Maeve Baldwin, the Ninth Circuit noted an inmate who had to unbraid his dreadlocks for purposes of transportation only. That was temporary, but it was still substantial because his belief required him to maintain dreadlocks. Similarly here, Mr. Rogers' religion calls for him to attend weekend religious services. So to restrict those services on a regular basis for more than a year, to never plan ahead and create some type of accommodation is substantial, especially where, in addition, where they decided to allow inmates to go to visiting. Visiting is subject to a rational basis test, whereas religion is subject to a strict scrutiny test. To the extent they argue, as they did in their affidavits about the 310-day lockdowns, allowing inmates to interact and congregate creates a security issue, then there has to be some explanation of why visiting was allowed when religion was not. And the basis for dismissing Giorbino was a question by Your Honors. That was certainly based on the 310-day lockdowns. The District Court did say that there was no connection between Mr. Rogers' claims, Giorbino's actions, and the 310-day lockdowns. So the District Court erroneously dismissed those defendants on the assumption that it was only a challenge to 310-day lockdowns. And finally, the question as to who was responsible, Giorbino and Warden Uribe directed these lockdowns take place, and Cluzeo Rowan provided an affidavit that she decided whether to allow programs on that day. So you can see in the appellate briefs, Giorbino and Uribe say Cluzeo Rowan was ultimately responsible for the denial, and Cluzeo Rowan says those other defendants were responsible because her hands were tied. Okay. Thank you. Thank you both sides for your arguments. Rogers v. Giorbino et al. submitted for decision, and that's the end of the arguments for this morning. We are in adjournment until tomorrow morning.
judges: Fletcher, Paez, Berzon